CHARLES M. MURDEN, plaintiff below, plaintiff in error, *vs.* COM-
MISSIONERS OF LEWES, a corporation of the State of Delaware,
defendant below, defendant in error.

1. MUNICIPAL CORPORATIONS—REMOVAL OF OBSTRUCTION TO CITY STREET.
    In action by owner of houseboat for damages resulting from the removal of his boat from a beach alleged by defendant to be a public street, court properly excluded as immaterial a lease from defendant, giving a railroad the right to construct piers; such right not necessarily carrying with it the right to obstruct the public user of the highway.

2. TRIAL—DUTY OF COURT TO EXCLUDE IMMATERIAL EVIDENCE.
    It is the duty of a trial court to exclude immaterial evidence, for it tends to obscure the real issues and confuse the minds of the jurors.

3. MUNICIPAL CORPORATIONS—SUMMARY ABATEMENT OF OBSTRUCTIONS IN STREET.
    Under 24 *Del. Laws, c.* 220, §§ 6, 7, and 14 *Del. Laws, c.* 536,Commissioners of Lewes are expressly given power to abate or remove a nuisance from a public street, and such statutes are broad enough to authorize a summary abatement of whatever obstruction of highways amounts to a nuisance.

4. MUNICIPAL CORPORATIONS—PROCEDURE FOR SUMMARY REMOVAL OF OBSTRUCTIONS IN STREET.
    The adoption by a municipal corporation of an ordinance providing a procedure for enforcing orders for the removal of obstructions from streets does not limit the exercise of the general power given by 24 *Del. Laws, c.* 220, §§ 6, 7, and 14 *Del. Laws, c.* 536, to do so in a summary way, and the procedure provided by the ordinance need not be followed.

5. MUNICIPAL CORPORATIONS—OBSTRUCTION IN STREET SUMMARILY RE-
MOVED.
    A municipal corporation has the right, independent of statute, to summarily remove any nuisance obstructing a street.

6. MUNICIPAL CORPORATIONS—SUMMARY REMOVAL OF NUISANCE FROM STREET.
    In summarily removing an obstruction constituting a nuisance from a public street, one acts at his peril.

7. MUNICIPAL CORPORATIONS—NUISANCE REMOVED NOT TO BE UNNECESSARILY INJURED.

One who removes an obstruction constituting a nuisance from a public street must not unnecessarily injure the obstruction.

(*October* 28, 1919.)

CURTIS, Chancellor, CONRAD and HEISEL, J. J., sitting.

*Robert G. Houston* and *J. Hall Anderson* for the plaintiff in error.

*Daniel J. Layton, Jr.*, for the defendant in error.

Supreme Court, adjourned June Term, 1919.

ERROR TO SUPERIOR COURT FOR SUSSEX COUNTY, June Term, 1918.

Action of trespass *vi et armis* by Charles M. Murden against the Commissioners of Lewes to recover for alleged damages to houseboat, certain personal property therein, as well as for personal injuries resulting from the removal of the boat from the beach and pushing the same into the bay. Judgment below for defendant, which was affirmed. Same case below, 6 *Boyce*, 48, 96 *Atl.* 506. Plaintiff brings error. Affirmed.

It was claimed by the defendant in error that some time in the summer of 1910 the plaintiff in error asked permission of the corporate authorities of Lewes to place his houseboat on the beach front at Lewes, Del., for the purpose of calking or repairing the boat; that permission was given to him by the Mayor of the town to locate the boat on the beach front for a period of two weeks, for the purpose aforesaid.

At the trial below the plaintiff and his wife denied that any limited permission was granted him. Plaintiff also showed that he paid a tax to the defendant.

In the declaration filed it was alleged:

"The said houseboat sprang a leak, and thereby became in danger of sinking, and the said plaintiff called upon the proper officers of said corporation for the purpose of obtaining permission to take and haul out his said houseboat from the waters of said bay, to and upon the beach."

The houseboat was located by the plaintiff upon the beach front upon what is known as Bay Avenue, and in the line of

South street extended. South street is the main thoroughfare from the town of Lewes proper to the beach settlement, and touches Bay avenue approximately at right angles. The houseboat was not only within the limits of Bay avenue, but was in the limits of South street; if extended down to the water front.

The houseboat was 25 feet long, 9 feet high and 10 feet wide. It was divided into a sleeping room, living room, kitchen, and toilet. In the course of time, during the occupancy of the beach by the plaintiff and his wife, he had built or collected around and about the houseboat other appurtenances and conveniences, such as chicken coops, platforms, a workshop, a pump or driven well, lobster pots, etc., all indicating an intention to remain indefinitely.

The plaintiff and his wife continued to live there until August twenty-third, 1911. Complaints were made to the Mayor of Lewes with respect to the houseboat by the residents of the town. Subsequently the Mayor verbally notified the plaintiff to move his houseboat. He disregarded the request. He was twice thereafter, at different periods, notified in writing to remove the boat. He, however, decided to stay on the beach.

The plaintiff not obeying the written notice served upon him by the defendant, on August eighth, 1911, the defendant adopted a resolution as follows:

"Motion prevailed that the houseboat owned by Murden, and bathhouse owned by Thomas Connell, be removed, and the bailiff to be instructed to hire force enough to remove the same."

On August twenty-third, 1911, the houseboat was removed by agents of the defendant by being pushed off into the water.

The defendant justified under the general plea of not guilty, and under several special pleas, in some of which the ordinance as set forth by the plaintiff was relied upon as a justification, and by other pleas, under which the defendant justified, in that the houseboat was an encroachment upon a public street or thoroughfare of the town, an obstruction thereon, and a nuisance, and which was subject to abatement after notice. The ordinance referred to is as follows:

"That it shall be unlawful for any person or persons, corporation or corporations, to obstruct in any manner whatsoever any public streets, lanes,

or alleys or sidewalks that may now or may hereafter be laid out in the town of Lewes, including the streets, lanes, alleys and sidewalks on the public lands and beach in front of said town and along the Delaware Bay shore, and it shall likewise be unlawful to place any house, boat or boathouse, any booth or anything else that may obstruct a clear view of the bay, on or upon what is known as Bay avenue or between Bay avenue and the low-water mark of said Delaware Bay.  *  *  *  In case of any obstructions in any of the pyblic streets, lanes, alleys or sidewalks, in said town, on the public lands and beach front, or upon what is known as Bay avenue and between Bay avenue and the low-water mark, said Bay avenue, which shall be adjudged to be a nuisance, written notice shall be given by the mayor or sect. or by supervisor of the streets to the owner, or depositor or person having possession thereof to remove the same, and upon his, her or its refusal or neglect to do so for the space of twenty-four hours after receiving such notice, he, she or it shall forfeit and pay a sum not exceeding ten dollars, to be recovered with cost by action before the mayor in the name of the commissioners of Lewes. *  *  *  In case of continuing nuisance of either class mentioned above, the owner, depositor or occupier, shall be liable to renewed complaints and forfeitures, and the town commissioners may in their discretion order the supervisor of streets with such assistance as may be necessary to abate and remove such continuing nuisance.  *  *  * "

Said ordinance, it was claimed, was adopted under authority of *section 6, chapter 220, Volume 24, Laws of Delaware*, as follows:

" The  *  *  *  commissioners of Lewes  *  *  *  shall have power to make, establish, publish and modify, and amend or repeal ordinances, rules, regulations and by-laws for the following purposes:  *  *  *  To ascertain and establish the boundaries of all streets  *  *  *  in said town, and the beach or beach strand or public lands in or contiguous to or vested in said town, and prevent or remove all encroachments on said streets,  *  * *  beach or beach strand; to regulate, clean and keep in repair the streets, highways,  *  *  *  wharves or docks in any manner whatsoever, to abate or remove nuisances of every kind, at the expense of those maintaining the same.*  *  * "

Evidence was introduced to show that Bay avenue was all that space from the building line of the cottages of the beach settlement to the bay shore, and all of that area or space was open to public use, and it was used continuously by the public since 1902, and that improvement permits were sold to prospective cottage builders upon the assurance of the municipal authorities that Bay avenue was open to the bay front and that all obstructions would be removed.

By *section 7, chapter 220, Volume 24, Laws of Delaware*, all of the public and vacant lands within the corporate limits of the town of Lewes, are vested in the Commissioners of Lewes,

"and the * * * commissioners shall have jurisdiction over the same; and all ordinances adopted by the said commissioners shall have the same force over and upon the said public and vacant lands as within the corporate limits of said town. * * * And if hereafter any person or persons shall, without the permission and consent of the said commissioners, build upon any of said public lands, he, she or they shall forfeit such improvements or buildings to the said town. * * * Nothing herein contained shall be construed to authorize any person or persons to build upon or inclose any of the said public lands without permission and consent of said commissioners."

See also *chapter 536, Volume 14, Laws of Delaware.*

The defendant, having introduced evidence to show that the land between the building line of the cottages and the waters of Delaware Bay was known as Bay avenue, and was, and always has been, used by the public as a thoroughfare, and that the houseboat, in respect of its location, was an obstruction to public thoroughfare, and a nuisance, the plaintiff endeavored in rebuttal to introduce in evidence a certain lease from the Commissioners of Lewes to the Queen Anne Railroad Company to disprove that Bay avenue was a public thoroughfare. It was contended that the lots leased to the railroad company for the purpose of erecting a pier or wharf embraced that portion of the beach on which the houseboat was located, and included the extension to the water front claimed in respect to Bay avenue which fact made such extension of Bay avenue as a thoroughfare impossible.

There was testimony that not only had this space always been used as a public thoroughfare, but that it was a most used portion of the beach; also that the houseboat was within the limits of South street, if South street should be considered, it being contended that it should be, as extending across the beach, or that portion of Bay avenue, to afford convenient access to the Delaware Bay. The lease was rejected as immaterial and irrelevant to the issue. The rejection of the lease was the basis of the principal assignment of error. The other assignments of error were directed to the charge of the court to the jury.

The assignments of error are substantially as follows:

That the court erred in refusing to admit as evidence in rebuttal the record of a lease executed by the Commissioners of Lewes to the Queen Anne Railroad Company of a right of way over the beach front at Lewes which included the land upon

which the houseboat stood; in not giving binding instructions to the jury; in not instructing the jury that Bay avenue is not a public highway according to the plot and ordinance of the town of Lewes; in submitting to the jury as a question of fact the location and extent of Bay avenue as a street; in refusing to charge the jury that the defendant had no authority to remove the houseboat summarily, but only under town ordinance No.1, in such case made and provided, and strictly in accordance therewith; in refusing to instruct the jury that the officers of the town had no authority to summarily remove the houseboat under the ordinance adopted relied on by defendant; in instructing the jury that if they should find that the houseboat stood on a public highway, and was a public nuisance, the plaintiff should have removed the houseboat and abated the nuisance if notified to do so, and upon refusal or failure to remove it, the commissioners had the right in law to abate the nuisance by summarily removing the obstruction in a reasonable and careful manner.

Curtis, Ch., delivering the opinion of the court:

The case is here on a writ of error to the Superior Court for Sussex county. Charles M. Murden brought his action there to recover damages for injury to his houseboat and contents which had been pushed from the beach at Lewes into the water, admittedly by order of the Commissioners of Lewes, the defendant, claiming that it was an illegal obstruction on Bay avenue. Permission had been given to the plaintiff to pull the houseboat out of the water for repairs, and the owner had ignored more than one notice to remove it.

In the charge to the jury it was properly and clearly instructed to determine whether the houseboat was such an obstruction to a public highway as to be a public nuisance, and if they so found, then to determine whether in exercising its lawful right to abate the nuisance the defendant exercised reasonable care to avoid unnecessary injury to the property removed. A verdict was rendered for the defendant.

Of the seven assignments of error the first relates to the refusal to admit in evidence the lease executed by the Commis-

sioners of Lewes to the Queen Anne Railroad Company of a right of way over the beach front at Lewes, and the other assignments relate to the charge of the court.

[2]  The lease was offered in evidence by the plaintiff below in rebuttal.  Evidence had been introduced by the defendant, tending to prove that the place where the house boat of the plaintiff was located was part of Bay avenue, or South street extended, and the public user of the beach front to the shore. It was urged by plaintiff that the lease of certain lots on the beach front in this locality to the railroad company, with the right to erect piers thereon, showed, or tended to show, that the whole beach front was not within either of those highways because the lease gave the right to obstruct the public user thereof by piers.  The court included the testimony because the lease did not prove, or tend to prove, the issue as to whether the houseboat was, or was not, within a public thoroughfare.  This was clearly a correct ruling.  The right to erect a pier did not necessarily carry with it a right to obstruct the public user of the highway, for the piers might be so constructed as not to obstruct such user.  The argument made for the plaintiff is that the boathouse was not in a public highway, because the town authorities rightly or wrongly had by lease given the railroad a right to obstruct the locality claimed to be the highway.  To use the words of the brief of the plaintiff's counsel, the piers "would have made the extension of Bay avenue impossible as a thoroughfare."  But the lease was so clearly irrelevant upon this point and to the issues in the case, that it was rightly excluded from the consideration of the jury.  It is the duty of a trial court to exclude immaterial evidence, for it tends to obscure the real issues and confuse the minds of the jurors.  The first assignment of error is untenable.

All the other assignments of error relate to the charge of the court to the jury, and the omission to charge as prayed for by the plaintiff.

The trial court rightly refused to give binding instructions to find for the plaintiff, to instruct the jury as prayed for by the plaintiff, and rightly submitted to the jury as a question of fact

of the location and extent of Bay avenue as a street; these matters being the subject of the second, third and fourth assignments of error.

The fifth assignment of error is that the court below erred in that it did not deny the right of the town commissioners to remove the houseboat summarily, or otherwise than in accordance with a certain ordinance of the town of Lewes. A disposition of this assignment will dispose of the remaining assignments.

[3, 4] Clearly the town commissioners had power and authority to prevent and remove obstructions and encroachments in and upon any highway of the town of Lewes. Such authority was expressly given by statute. It is also expressly given power to abate or remove a nuisance of any kind. These powers so given are broad enough to authorize a summary abatement of whatever obstruction to a highway amounts to a nuisance. The adoption by the town of an ordinance providing a procedure for enforcing orders for the removal of obstructions does not limit the exercise of the general power in a summary way and without adopting the procedure, for the grant is general and the town is not by the charter limited to an exercise of the power in a manner to be provided by ordinance. In *Hart v. Albany*, 9 *Wend.* (*N. Y.*) 571, 24 *Am. Dec.* 165, the court recognized the right to abate a nuisance per se summarily, though there was an ordinance providing a remedy. To the same effect is *City of Red Wing v. Guptil*, 72 *Minn.* 259, 75 *N. W.* 234, 41 *L. R. A.* 321, 71 *Am. St. Rep.* 485.

It is to be assumed that the houseboat was an obstruction to the free use of a highway by the public, and a public nuisance. It has been so found by the jury for, having been instructed in substance that any unlawful tangible obstruction which interferes with the use of the whole of a highway by the public is a public nuisance, they found for the defendant.

Of course a municipality has no right to so remove from a highway as a nuisance something which is not a nuisance. The cases cited by the plaintiff in opposition to the right to abate nuisances were cases in which it was not shown that the objectionable thing was a nuisance. *Coast Co. v. Spring Lake*, 56 *N. J.*

*Eq.* 625, 36 *Atl.* 21; *Dawes v. Hightstown*, 45 *N. J. Law*, 127; *Yates v. Milwaukee*, 10 *Wall.* 505, 19 *L. Ed.* 984; *Davis v. Davis*, 40 *W. Va.* 464, 21 *S. E.* 906.

[5] Independent of the charter powers the Commissioners of Lewes had a right summarily, and without a hearing, to remove the houseboat as a public nuisance, as an obstruction to a public highway of the town. Such right is inherent, and no pertinent authority to the contrary has been shown or found.

A municipal corporation may summarily remove from a public highway any tangible object placed there which so obstructs the public use of the highway as to be a public nuisance. 3 *McQuillan on Municipal Corporations*, §§ 904, 926, 1370; *Joyce on Nuisance*, § 345; 1 *Abbott on Municipal Corporations*, *p.* 277; *Hart v. Albany*, 9 *Wend.* (*N. Y.*) 571, 24 *Am. Dec.* 165; *Baumgartner v. Hasty*, 100 *Ind.* 575, 50 *Am. Rep.* 830.

In *Baumgartner v. Hasty* the court said:

"But it is settled without dissent that without a special grant of authority public corporations may, as a common-law power, cause the abatement of nuisances, and if the nuisance cannot otherwise be abated, may destroy the the thing which constitutes it. The authorities do, indeed, go much further, for they declare that it is the duty of the corporation to abate public nuisances. It is one of the oldest of the common law rules, that an individual citizen may, without notice abate a nuisance, and, if it is necessary to effectually abate it, destroy the thing which creates it [citing numerous authorities]. These authorities, running back as they do into the early years of the common law, and extending in an unbroken line to the present time, prove that not only may a governmental corporation abate a nuisance by the destruction of the thing constituting it, but so, also, may a private individual. It is, therefore, not the delegation of a new or extraordinary power to authorize a municipal corporation to abate nuisances by removing or destroying the thing which creates it. * * * "

[6] In summarily abating a nuisance one acts at his peril. The court in *People v. Yonkers*, 140 *N. Y.* 1, 10, 35 *N. E.* 320, 323 (23 *L. R. A.* 481, 37 *Am. St. Rep.* 522), said:

"Whoever abates an alleged nuisance and thus destroys or injures private property, or interferes with private rights, whether he be a public officer or private person, unless he acts under the judgment or order of a court having jurisdiction, does it at his peril, and when his act is challenged in the regular judicial tribunal, it must appear that the thing abated was in fact a nuisance. This rule has the sanction of public policy, and is founded upon fundamental constitutional principles."

30 Del.]     Murden vs. Commissioners of Lewes.          437

Opinion.

[7]   One who abates a nuisance must not unnecessarily injure the obstruction.   As a necessary inference from the verdict of the jury for the defendant, the town authorities removed the houseboat without doing more injury to it, or the contents thereof, than was necessary.

There being no error in the record, and none of the assignments of error being tenable, the judgment of the court below will be affirmed here, with costs in both courts on the plaintiff in error.